Good morning. The next case on today's topic is the case of Leanne Merchant v. Richard Merchant. And we have, for the ex-college, we have, is this correct, Jillian Wood? Yes. Okay. Your writing is about my time. And for the academy, we have Jill Lox-Shubin. And you may proceed, Ms. Wood. May it please the Court, I believe my name is Jillian Wood. I'm on the counsel for the appellant Richard Merchant in this particular case. To begin, Your Honors, I'd just like to go briefly over sort of the timeline of events with regards to this particular case. Obviously, this case was initiated by the petitioner appellant, Leanne Merchant, on March 28th of 2014. Ms. Merchant filed an ex parte order of protection with the Circuit Court of St. Clair County. That ex parte order of protection was granted, and there was a plenary order of protection hearing that was held on April 14th of 2014. At that hearing, both Ms. Merchant and Mr. Merchant testified, as well as a police officer who was involved subsequent to the alleged incident that occurred at the Merchant home that evening in question. And he was able to provide some testimony as to his interactions with Ms. Merchant and both Mr. Merchant. After the hearing on the evidence, obviously the trial court entered an order of protection against my client, Mr. Merchant, basically, and also made both Ms. Merchant and the children protected parties within that order of protection. In its decision, I think the court really focused, and it's apparent in the transcript that the court focused on four primary things. One was, I think, one issue was who drank what and how much on that evening. The taking of a computer from the family home. Some issues with regard to discipline of the children, and in question about, I guess, pornography that may have been in the home at the time. Certainly, you know, this case, and I think the court even said, suggested in its testimony when it was making its decision, that this family has some dysfunction. And certainly, we're not arguing that this family does not have issues. And certainly, the parties did proceed into a divorce proceeding. However, the central issue in this case is whether or not in an order of protection proceeding, the petitioner has been abused. And that would include both the petitioner and the minor children, whether they have been abused, and whether the fact that the abuse suffered by the petitioner is, in fact, supported by a preponderance of the evidence. And of course, the court's finding will only be reverse abstinence, showing that the finding was against the manifest weight of the evidence, which means either that the findings of the court's ruling was unreasonable, arbitrary, or not based upon the evidence presented. Your Honors, in our first argument on appeal in this case, we suggested that the court, we state that the court erred in granting order of protection for the minor children for the reason that there was no abuse that was inflicted upon the minor children. Specifically, I think within the verified order of protection, the court cited that there was both harassment of the children, I think, and abuse, physical abuse of the children. And there was things within the legal file marked in those boxes. Those were the types of abuse that the court indicated had been inflicted upon the minor children. With regard to harassment, obviously, harassment has a very specific definition under the statute. Specifically, harassment means knowing conduct, which is not necessary to accomplish a purpose that is reasonable under the circumstances, would cause a reasonable person emotional distress, and does cause emotional stress to the petitioner. And backing up a little bit, I mean, obviously, the statute also defines first abuse, which is physical abuse, harassment, which is one of those, intimidation of a dependent, interference with personal liberty or willful deprivation, pardon me, but does not include reasonable direction of a minor by a parent or a person in local parenthood. Specifically, we believe that the court erred in finding that petitioner, that Mr. Merchant, the appellant, had harassed the minor children. Obviously, there was conflicting testimony of the parties throughout this proceeding as to what occurred, what didn't occur, obviously their recollection of events was very, very different. However, I think what we did determine and like to see were the uncontroverted facts within the case are that both parties were drinking that evening and that there was a disagreement that occurred within the home. With regard to the minor children, though, there was no evidence that the children were emotionally distressed by things that happened that evening in the home. Specifically, with regard to the issue of harassment, there was a case that was decided recently by the courts, and it was the case of Young v. Young. This was a situation, I think one of the suggestions by the court was this concern about pornography. Within the Young case, there was obviously an issue of pornography in that case, pornography that may or may not have been on this iPad, that the mother in that particular case viewed on the iPad. The trial court in that case felt that whether there was pornography on there created a substantial risk to the minor children that it would, in fact, cause them emotional harm. The issue in that case and why it was reversed by the appellate court was the risk of emotional abuse. There was no actual finding that the children had been emotionally sort of affected by this alleged pornography. Additionally, there was no evidence that the father in that case had intended or done anything in an intentional way to inflict emotional distress on the children. In this particular case, we have a very similar situation in that the testimony of the parties was that obviously the pornography was in the home. I think Mr. Merchant admitted that they were both irresponsible with it, but they both used the pornography during the course of the marriage. Mother's testimony was obviously contradicted by that. She contradicted what he had to say about that. I think what they did testify to was that the parties' eldest child had observed it. However, it was in a doorway. At one point, she saw it when I guess the father was observing it away from the children, so she observed it through a doorway. And then when she opened up the computer, Mother's testimony was that there was this movie playing. This was a computer that the family used. It was. Used by everyone, as the other case was not. In the other case, it was an iPad that all the parties had access to. But didn't use. I'm sorry? All the parties didn't use. In this case, the child did use the computer. In fact, it was used for homework. Homework, yes. It was on the home computer that Mother testified that this was on there. Obviously, my client testified that it was an accident. It was not intentional. He was irresponsible with it, but certainly was not intending to cause the children or the child any type of emotional harm. Also, in the young case, what there was in that particular case, the iPad had been used by the kids and had been observed. There was witness testimony that Father had also used the iPad. And that was the connection that Mother had tried to connect with regard to that iPad usage was that he used it. The kids had access to it. Therefore, they were in danger because they had access to that specific iPad with the alleged history on there. I think, though, specifically in the young case, there was no intent. Obviously, there was no intent. And there was significant testimony about the fact that there was never any history of, you know, any type of abuse or concern about pornography or that he had ever harmed the children or acted inappropriately with the children. In this particular case as well, I think both parties admitted it was in the house. Mother admitted that she had knowledge of it being in the house. But then it wasn't, and Father testified that it wasn't intentional. Obviously, it was an accident. It was irresponsible, certainly. But there was no testimony that the child had actually been harmed by it. Are you saying that there has to be a showing that there's harm, actual harm? Yes, there does need to be a showing. The statute requires. Okay. And how would you suggest that be proven? Well, I would suggest, Your Honors, that it would need to be proven either by the testimony of the 11-year-old child, who was not present for this particular hearing. I think if she had come in and provided some type of testimony to that effect, certainly the court could have made that connection. I think more importantly, though, what the officer testified to, the police officer testified to in his discussions and meetings with the parties after this incident that occurred in the home, was that the child was, you know, unhappy, but that she was not unreasonably upset. She wasn't traumatized and seemed to appear to be traumatized in any way. So this third party's observation of this particular child, who was the only child in the home apparently that viewed the pornography, is that she was not in an emotionally distressed state. She was unhappy. Obviously, her parents were in an unfortunately dysfunctional, I think, relationship, but she wasn't traumatized or harmed by it. So, what if the pornography could be ongoing with respect to a child viewing it, and unless the child indicated that they were harmed by it, that would be okay? No, I wouldn't suggest that that would be okay, Your Honor. I think the issue would be is that we would need to have evidence that a child was harmed by it, and I don't think in this particular case there was a situation where it was ongoing after these parties separated. Obviously, the mother testified she got rid of things. The father obviously testified he'd been responsible that we needed to do better. Certainly, the parties stated their intention to be more responsible with regard to whatever their issue, whatever type of materials they were using during the course of their marriage. Wasn't there evidence of an argument between the father and the daughter? There was evidence, yes, Your Honor, of an argument. I think that goes to the issue of other abuse, I think, within this case. Certainly, there was an exchange between the father and the daughter. Mother's testimony specifically, I think, indicates that this may have been father's reaction or some type of discipline. If you look at the transcript on page 7, lines 19 through 20, there's some discussion about you shouldn't be getting involved in, you know, the issues between your parents. Obviously, you know, discipline, reasonable discipline is outside of the scope of what we would consider abuse under the statute. What about the evidence that the daughter vomited at the police station? That was only the testimony of mother. Mother was the only one to testify to that. The police officer who was in and out of the room with these folks for about 45 minutes, both mother and the daughter, said that he never observed anything, never saw anything. His specific testimony was, again, that she was upset, you know, that she was unhappy, but she wasn't traumatized. She didn't seem, obviously, fearful, terribly upset, not traumatized, but was unhappy, I think, was what I would say. But wouldn't that be a credibility issue for the judge to determine? It would be a credibility issue for the judge to determine, absolutely. But I think in this particular case, it was we had the benefit of this particular police officer who had the opportunity to observe the parties. Whether that happened or whether or not happened, obviously, that's an issue of fact for the court to determine. And, you know, there was no other evidence apart from when mother testified to contradict that, other than what the police officer was able to observe of the parties of mom and the daughter during his time with them when they were at the police station. Obviously, he said he didn't observe anything to that effect, but he said he did. He did not observe it as well. Did the police officer testify that he removes considerable amount of tapes or disks or something from the house? No, he did not. That was mother's testimony. The mother testified to that? Mother's testimony. And how much was that? Bags of it, wasn't it? She testified that it was three bags. Are these trash bags or what bags or grocery bags? I'm not sure. I think they're garbage bags. Garbage bags. Garbage bags. Garbage bags. Three garbage bags, which, interestingly enough, none of that information, if you remove three garbage bags of material from the home, none of those items were brought as any sort of corroborative evidence to this hearing. So I think that's a good clarification on that. The other issue, I think, of abuse that maybe came in was this discipline of the minor children. Mother claimed that, although it wasn't pled in her verified pleading, that father had popped the party's son in the face. Certainly, Mr. Merchant admitted to disciplining his children and used the term woman, maybe not the most artful term for disciplining younger children, either like a spanking or something. But basically, I think with that admission that it was discipline, I don't think there was enough evidence, as far as her mom's testimony, as to the amount of time, certainly the other child wasn't there, that this wasn't anything outside of normal discipline of a child. And specifically, mother said never had done anything to either of the girls. It was only to the son who had, I guess, previously maybe popped in the mouth as a form of discipline. With regard to, I'd like to move on to my next point, Your Honors. We have argued in our brief that the trial court erred in granting the oral protection for mother, that there was actually no abuse and that the finding that there was abuse against mom was against the manifest way that the evidence. Specifically here, there was some very, very contradicting statements made by the court. Specifically, when the court ordered that mother was to be a protected party, found that there was probably abuse, but then later went on to say that there was a verbal dispute, a physical dispute, quite possibly a physical dispute, but didn't specifically say there was a specific finding of physical abuse. Certainly, this is a case where I think the best case comes in with regard to all of this. In best, obviously we had a situation where we had two, kind of a very similar situation. We had one party saying one thing, one party saying the other thing, and then we had a police officer in the middle. Obviously, what I'm saying is she was abused. Dad's saying he didn't push her or shove her or do anything. The police officer in that best case was actually the person that was able to tip the scales. I think mother's testimony was called into question. Her credibility was strongly called into question during that hearing. And it was the police officer's testimony and observance of these parties and what they found which tipped the scales in the direction that the abuse occurred. Specifically in this case, I think it was important to note that the officer's specific testimony was that mother had stated to him that she'd been in an argument with her husband, that they'd been at the home prior to her coming with the children to the police station, and that in the course of being at the home with father, that he'd been drinking and that had argued, and he'd become violent out of temper. Officer Frohman testified he noted no signs of physical abuse when mother came in. I think this case is very, very much like the best case. We have these conflicting testimony of the two parties, but clearly the officer, when she came in and she provided this information to them, it was what I think sort of the uncontroverted fact showed. There was an argument. They did yell. They did argue with one another. But there were no signs of physical abuse. There were no signs that she had been harmed in any physical way. So I think that the officer's testimony certainly supports that there was no abuse. And certainly the court's testimony that there would have been quite possibly, mostly verbal abuse, possibly physical abuse, these are conflicting things. And I think they manifest way to the evidence, and the evidence that was presented before the court shows something in the alternative. Obviously they're running out of time, but obviously there are a couple other issues with regard to, you know, the trial court's finding as to Mr. Merchant's credibility. He asked the court to look at our briefing, but essentially there were two findings. One, that he made a big deal out of them both, out of them both drinking a lot of wine that night, and that they shared a bottle, and there was an issue with the computer. And I apologize I'm out of time, Your Honors. You'll have the opportunity to rebut. Absolutely. Thank you. Thank you. Ms. Lowe, is it Lowe or Locke? Locke. Locke. Gilbert. My name is Jill Gilbert. I represent the petitioner, Leanne Merchant, who is also the athlete in this case. It is our position that the trial court's finding in granting the plenary order of protection and in denying the motion to reconsider, that the court was correct that it did not care that its finding of abuse against both the petitioner and the children was supported by preponderance of the evidence and that those findings were not against the manifest weight of the evidence. As the best case, which has been cited by the appellant, that standard is clearly, when the opinion is clearly, an opposite conclusion is clearly evident, that the finding is unreasonable, arbitrary, and not based on the evidence presented. In addition to the points that were presented by appellant's counsel, there were many other findings, bases upon which the court found that it was appropriate to issue the order of protection against Mr. Merchant and in favor of Ms. Merchant and the children. There was ample testimony, much of which was not rebutted successfully by Mr. Merchant or by the police officer who testified that would support those findings. Specifically, the court found that Ms. Merchant had been abused, that there was evidence of physical abuse, both physical force in pushing her on the evening of the altercation, sexual abuse in the form of rapes, which took place on many occasions according to her testimony, which he did not deny, as well as waking her in the middle of the night, sleep deprivation, as well as another incident in the past where the police came and she had blood running down her face. There was testimony about taking her phone away, intimidating her and trying to restrict her ability to call 911. The appellant does not seem to be as focused on the issue of the order of protection in favor of Ms. Merchant, and so I will shift most of my focus of my argument on to the children because that seems to be the focus of theirs and I think it was addressed, the finding by the trial court with regard to the abuse against Ms. Merchant. The statute defines intimidation of a dependent as the witnessing physical force. In this particular case, all three children were present on the evening of March 27th. In fact, the party's daughter came in while the parties were arguing and the testimony by Ms. Merchant was that Ms. Merchant got, quote, nose-to-nose with her and was screaming, I think she said, on the top of his lungs. The son, it was later found out, was also awake during these altercations and all three children left with Ms. Merchant that evening. Sleep deprivation is also another basis for finding of physical abuse and in this case, clearly, at least two of the children we know were awakened by the events that took place between Mr. and Mrs. Merchant. There were allegations and testimony by Ms. Merchant about Mr. Merchant's acts of physical abuse against the children. That was raised in Ms. Merchant's petition. She specifically made the allegations that Mr. Merchant, I want to get the right language, Mr. Merchant beats their son, hits him all the time in the face or the butt or leg or whatnot, pops him in the face 15 times per month and beats his butt once per month. That was her testimony. There was also testimony that he also beat their youngest daughter, not as much as the son, but that he popped her, too. And there was, yes, there was discussion about weapons and there was discussion about the children being terrified of their father, him screaming at them. The case of Emory the Marriage of Holtharth kind of addresses one of the court's questions, which had to do with does there have to be actual harm? Physical abuse is defined in the statute as knowing and reckless conduct, which creates an immediate risk of harm. In the case of Emory the Marriage of Holtharth, the court had made a finding that there was neglect of the children. And on appeal, the issue was raised that's not really a basis under the statute to grant an order of protection. And the appellate court held that because there was this knowing and reckless conduct that created an immediate risk of harm, that, in fact, that constituted physical abuse, which supported an order of protection. Similar in the case of Carr, we have the issue of the pornography. The pornography was on the computer, as your honors pointed out, the children used for their homework. That Mr. Merchant did not deny was used for the children's homework. It was the family computer. He acknowledged that it was irresponsible to have that pornography on the computer. In fact, in this particular case, at least on one occasion, the daughter saw the pornography when she went to do her homework. The fact that there had been previous pornography in the home, Ms. Merchant's testimony was that she had removed the three garbage bags in October. The order of protection hearing was in April. So the reason the evidence wasn't brought to court was because it no longer existed. She threw it away. Ms. Merchant believed it was gone at that point. She had no idea it was on the computer or any other place in the house. There was also testimony that after Ms. Merchant and the children left, when they went back the next day with the police officer, there was broken glass. The house was in shambles. When asked on cross-examination about the glass and whether or not it might have occurred during the altercation, Mr. Merchant sort of brushed it off and said, well, I think it had been there a while. Well, to me, broken glass in a home where children are certainly also creates a risk of harm. Whether it had been there for a day, an hour, a week, or a month, that yet was another example of harm to the children. The case that was cited by the appellant in remarriage of Young, while being a Rule 23 opinion and not having presidential value, is somewhat, it's one of the few cases out there that talks about orders of protection. So to get some guidance as to how the court was thinking, I think it can be easily distinguished here factually. And Your Honors touched on that in your questions of opposing counsel. In that particular case, the father, it was at least in the case what I read, it was his computer. This wasn't a computer the children regularly used. It wasn't a computer he had expectations that anyone would use. And in fact, I think it was worded that the mother stumbled upon it, the pornography. I think also in that case, it came across to me as if the children never actually saw the pornography. In this case, the testimony was that, in fact, the party's daughter did see the pornography on the computer. And then, oh, just by chance, when Ms. Merchant went back with the children, that computer that the children used for their homework had been removed. Mr. Merchant never denied that. In fact, in his testimony, he wanted to make it clear that he left Ms. Merchant her laptop that Ms. Merchant used. But he didn't deny that he removed the laptop where the daughter had seen the pornography. As Your Honor pointed out, the issue of credibility is strictly up to the discretion of the trial court. And in this case, we believe that the trial court properly assessed the credibility of the witnesses, both in his brief and in the hearing. A big issue was made about the drinking. And I took the time this morning to go through and find all the times of Mr. Merchant and all the things he said about drinking. Because in his brief and in his argument, Mr. Merchant makes it sound like all happened. The only thing he mentioned was that, hey, before this altercation, we split a bottle of wine. No, no, no. He made many comments. He commented about her being erratic. He commented that, you know, when she's been drinking, we don't know what's going on. He says, always when she gets home, the first thing she does is she cracks open a bottle of wine. I wait until after dinner to have a drink, but she always has one. Then he talks about on the 9th of March, 27th, they decided to go look for a new car. And in the same sentence where he said she had cracked the bottle of wine, she filled up a cup before they went to the car dealer. He then talked about coming home and drinking this bottle of wine. The police officer, when he testified, indicated that when he talked to Mr. Merchant that evening, Mr. Merchant didn't say, are my children okay? Is my wife okay? Did you think my wife was drinking? Is there any sign she was drinking? He also asked, interestingly enough, where his gun was and how he could get his gun back and how he could protect his interests in a divorce or custody case. The officer corroborated Ms. Merchant's testimony and indicated that some two to three hours after she allegedly had one to two bottles or half a bottle to a bottle of wine, I suppose, he didn't smell alcohol in her breath. He didn't notice any change in her affect, no glassy eyes, no slurred speech. He had no suspicion. I think his testimony was, I had no suspicion at all that she was drinking. That evidence of the drinking was only one basis upon which the court found issues with Mr. Merchant's credibility. There were questions on cross-examination about the events that took place. Mr. Merchant tried to make it sound as if there had actually been physical contact by Ms. Merchant, but yet he couldn't say whether he was hit with a closed fist, open fist, right hand, left hand, where she was standing in relation to him. He testified that he had a ripped shirt and he had scratches on his face, yet he provided no evidence at the hearing of any of these items. He did not file any kind of charges against Ms. Merchant. He had no witnesses to say that they saw him the very next day when he went to work with scratches on his face. No photographs, no witnesses, no evidence, but yet he tried to make this look as if it was mutual. All of those were factors. There were other factors as well, but those were some of the major points that the court relied in finding that Mr. Merchant was not a credible witness. Ms. Merchant was not impeached. Most of her testimony was not called into question. He didn't refute a lot of the allegations about their history. And in this particular case, it's our position the trial court properly found that both Ms. Merchant and the children had been abused as defined by the statute and that it was proper to issue an order of protection in their favor. As a side note, most of this becomes moot because the order of protection expired on its own terms December 14th. And it has not been, it was never, no one sought to renew it. It was not renewed, and at this point there is no order of protection. At the time of the briefs, the order of protection had not been, no one had requested that it be extended, and it had not yet expired. How long of an order was in? Six months. And it was contemplated at the time, Your Honor, that a divorce would be filed. In fact, in the order of protection, when the court found that the children should be protected parties, the court had some very specific direction and stated that the visitation would be reserved between the petitioner, or respondent, Mr. Merchant and the children until such time as a family court case could be opened, petition could be filed, and a court could make some type of an investigation about the allegations. DCFS had gotten involved at that point. But the court had specifically said that Ms. Merchant would have physical care of the children and let the family court make a ruling, which that case has since been opened in this case. Thank you. Thank you. Thank you. Do we have a follow-up question? Well, is this case now moved? I'm sorry, Your Honor? Is the case now moved? I don't believe so. I think that the court is well settled at this point that while these cases, the ex parte order of protection may have been expired, these are things, orders of protections are ongoing issues. Yes, it's expired at this point, but the finding of abuse and the finding that the court made, I think my main issue with counsel's sort of description and representation of the court about that is that it doesn't have any sort of permanent bearing on this case. Certainly, if an order of protection in a trial court and an order of protection enters a plenary order of protection, that becomes a finding of abuse against one party by the other party, and it has an absolute impact on the disposition of custody in a case. It is something that goes on the state central registry. It is certainly something that I wouldn't necessarily characterize as moved by any stretch of the means, because this is certainly something that follows a person beyond the day that that gets entered by the court. I do want to make some specific sort of contradictions to the things that I heard counsel say. With regard to a lot of the testimony of the parties, certainly there was extensive testimony, extensive allegations. To say that Mr. Merchant didn't rebut any of those allegations, though, I think is incorrect. Certainly, as to the sexual abuse that Ms. Merchant claimed that was inflicted on her by Mr. Merchant, he absolutely and patently denied that that abuse had occurred. He said, I've never done that, I've never hit my wife, I've never sexually abused her. Certainly, there was some discussion about prior incidences that these parties had had back when they lived in Texas, when they lived in, I may be incorrect about this, but North Dakota, other places that they've lived as a result of their military sort of career and movement. Part of the testimony that Ms. Merchant admitted that there was an incident before, but that it was dismissed. And there was no evidence, apart from the testimony of the parties, about these physical acts, you know, incidents that happened. And there was no other corroborating evidence. I think that's one of the important things to say, to clarify. Certainly, we can make allegations back and forth, but when you look at the totality of this situation, and who was involved at the time, and what was stated to the police officer when the police officer questioned Ms. Merchant, was that there was a dispute that occurred in the home, but there was no evidence of a physical abuse. He didn't see that. And certainly, he didn't see, you know, abuse or intimidation of the minor child. She was very unhappy, but she wasn't traumatized. You know, with regard to the trial court's findings, I think also as to the issue of the alcohol, that became a major issue. And really, the court's focus really was on those four main points that I had put in, as specifically stated in the transcript of the court proceeding, as to where the court was focusing. But the trial court did make it said that Mr. Merchant made a big deal about the drinking. If you look back at the testimony of Ms. Merchant, she made a big deal about the drinking and his drinking, too. There were allegations that went back and forth between these parties about who drank, who drinks more, who drinks less. They both admitted that they'd gone to some sort of counseling. Ms. Merchant had admitted that she had gone to some type of out-and-on meeting with regard to the marital counseling. But specifically, what Mr. Merchant had stated was that they shared a bottle. The court found that Mr. Merchant had stated that she had drank the whole bottle by herself and that she had started on the second bottle. Clearly, that was not Mr. Merchant's testimony, though. He said that they had shared that bottle of wine. Additionally, with regard to the taking of the computer, he specifically stated, yes, I took the home computer, but I specifically left her computer, her computer that she would need for school. So on those two issues with regard to credibility, the court made a very specific finding. I find you uncredible for these two reasons. But when you look at the transcript of the preceding evidence that was presented, it's mischaracterized, it's absolutely mischaracterized what it was that Mr. Merchant said. He shared the bottle, he took the home computer, and specifically left her computer there. And obviously, there was no evidence, there was nothing to be gained from him saying anything about the pornography of taking the computer. He'd already admitted to that. So it wasn't as if taking the computer was some sort of act of subterfuge. He admitted that they had the pornography. It was irresponsible. But that wasn't connected to his taking of the computer. He left her computer so that she could have it for her studies. Additionally, Your Honors, I would like to focus the court's attention to our last argument on appeal, which was with regard to the motion for remarry and some of the evidence and comments that the court had made with regard to those findings. Certainly, we can appreciate that there is experiences that we all have. However, I think a lot of what the court said on that date specifically references events, things that didn't occur, evidence that wasn't presented, conclusions that were drawn where there was no expert testimony about how children who are involved in dysfunctional relationships may or may not respond in situations where parents are having a disagreement. And it also disregarded the testimony of the police officer, which was specifically that he did not observe this child to be upset or traumatized that she was unhappy. And he also talked about his own sort of experiences with her father, which I think was enlightening also and should be looked at. For that reason, we're asking this court to set aside a word of protection for the court's petition. Thank you.